Bryan W. Pease, State Bar No. 239139
**LAW OFFICES OF BRYAN W. PEASE**
302 Washington St. #404
San Diego, CA 92103
Ph. (619) 723-0369

DAVID R. SIMON, State Bar No. 145197
**SIMON LAW GROUP**
3843 S. Bristol St., Suite 294
Santa Ana, CA 92704
Ph. (714) 975-1728

MITCH C. WALLIS, State Bar No. 227253
**LAW OFFICES OF MITCH C. WALLIS**
1286 University Ave. #338
San Diego, CA 92103
Ph. (619) 295-5475

Attorneys for Plaintiff
EVOLUTION FAST FOOD

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EVOLUTION FAST FOOD
GENERAL PARTNERSHIP, a
California general partnership,

                    Plaintiff,

          v.

HVFG, LLC, a New York limited
liability company; LA BELLE FARM,
INC., a New York corporation; BELLA
POULTRY, INC., a New York
corporation; and B & B FARM, INC.,
a New York corporation,

                    Defendants.

Case No.  **'15CV1139 AJB BLM**

**COMPLAINT**

**JURY TRIAL DEMAND**

1

**INTRODUCTION**

1.     This is a private attorney general action brought by Plaintiff on behalf of itself and the general public to challenge the unfair business practices of Defendants in selling grossly enlarged livers from force fed ducks in California that are produced in violation of Defendants' home state animal cruelty law, which is substantially similar to California's animal cruelty law.

2.     Plaintiff has suffered measurable damages as a result of Defendants' illegal actions. However, Plaintiff is seeking only injunctive relief by this action to prevent the continued sale of the illegally produced livers in California, for the protection of all consumers. Plaintiff thereby seeks no greater or different relief for itself than for the general public.

**JURISDICTION AND VENUE**

3.     This Court has diversity jurisdiction over this action because all Defendants are domiciled in a different state from Plaintiff, and the injunction sought by Plaintiff would cause a loss to Defendants of greater than $75,000.

4.     This Court additionally has subject matter jurisdiction over this action because the relief sought by Plaintiff requires resolution of a substantial question of federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

5.     Venue is proper in the Southern District of California because Defendants have intentionally and deliberately made a substantial portion of their sales of the illegal duck livers directly to San Diego consumers and restaurants, thus availing themselves of the privileges and protections of this jurisdiction.

**PARTIES**

6.     Plaintiff EVOLUTION FAST FOOD GENERAL PARTNERSHIP ("Plaintiff" or "EVOLUTION") is a general partnership based in San Diego, California. The primary business of EVOLUTION is making and selling healthy and sustainable food.

7.      Defendant HVFG, LLC ("HVFG") is a New York limited liability company based in Sullivan County, New York owned by Michael Ginor and Izzy Yanay. The primary business of HVFG is force feeding ducks to artificially enlarge their livers to make foie gras.

8.      Defendant LA BELLE FARM, INC. ("BELLE FARM") is a New York corporation based in Sullivan County, New York owned by Herman Lee. The primary business of BELLE FARM is force feeding ducks to artificially enlarge their livers to make foie gras.

9.      Defendant BELLA POULTRY, INC. ("BELLA POULTRY") is a New York corporation based in Sullivan County, New York owned by Herman Lee and operates the same farm as BELLE FARM.

10.     Defendant B & B FARM, Inc. ("B & B FARM") is a New York corporation based in Sullivan County, New York owned by Herman Lee and operates the same farm as BELLE FARM.

## FACTUAL ALLEGATIONS

11.     Plaintiff has operated a restaurant at 2965 5th Ave., San Diego, CA 92103 for the past five years.

12.     The foods Plaintiff sells are produced without cruelty to animals, using plant-based ingredients that are all natural, non-GMO (genetically modified organism), and mostly organic.

13.     Defendants produce and sell foie gras, an appetizer dish made from the grossly enlarged liver of a force fed duck.

14.     Over 15 countries have banned force feeding to make foie gras, either through specific laws or application of general animal cruelty laws. Only a handful of countries still allow this production method. Most states in the United States are also thought to prohibit this cruelty through general anti-cruelty laws, and there is only one county in New York State where all commercial U.S. foie gras producers are located, and they are all named in this lawsuit.

15.     Defendants operate under the auspices of a sympathetic local district attorney who refuses to enforce New York State's animal cruelty law despite repeated attempts by the ASPCA and other law enforcement agencies to file animal cruelty charges against Defendants. District Attorney James Farrell has adopted his pro-foie gras stance because he must seek reelection in a rural county in which force feeding ducks to make foie gras is by far the largest industry. D.A. Farrell's unreasonable and disproportionately zealous protection of local foie gras industry backers is shown in a bizarre current example: instead of prosecuting Defendants for animal cruelty, D.A. Farrell is currently prosecuting a young college student for felony burglary for investigating and documenting conditions at Defendants' farms and submitting an affidavit about what she witnessed in a report to the U.S. Department of Agriculture and in a civil lawsuit. (http://www.nytimes.com/2015/02/23/nyregion/amid-foie-gras-controversy-an-activist-faces-a-felony-charge-in-poaching-of-ducks.html, last visited May 19, 2015.)

16.     D.A. Farrell's predecessor and mentor, Stephen Lungen, also protected the local foie gras industry and prosecuted activists for documenting conditions at the factory farms rather than prosecuting Defendants for animal cruelty. Farrell thought Lungen went too easy on the activists, and he is now seeking a felony conviction in the pending criminal case.

17.     When Lungen retired and endorsed Farrell in 2008, Farrell's opponent stated that he would enforce New York State law and put a stop to the illegal force feeding at Defendants' operations. A true and correct copy of a letter from Farrell's opponent stating this is attached hereto as Exhibit A.

18.     However, Farrell prevailed and has not been challenged for reelection since. Accordingly, no court or jury has ever had the opportunity to determine if Defendants' practices violate New York State animal cruelty law.

/ / /

4

19.     Defendants have specifically marketed foie gras to restaurants such as the one run by Plaintiff that promote ethical and sustainable eating. Defendants have in the past falsely advertised their foie gras as "humane," resulting in a 2009 decision by the National Advertising Division of the Better Business Bureau that prevented Defendant HVFG from continuing to use this false and misleading term to describe its products.

20.     Due to the force feeding, the foie gras produced by Defendants is over 85% fat and has a creamy texture. It bears no resemblance to ordinary liver or any ordinary meat product.

21.     There is mass confusion in the culinary community about how foie gras is produced, with the result that it is frequently sold at restaurants that specialize in sustainable, free range and even vegetarian foods and is paradoxically often considered part of this same category of food. Conversely, restaurants that specialize in cheaply mass produced, industrial food are not the types of restaurants that typically sell foie gras.

22.     For instance, Alice Waters, the Berkeley chef who is nationally famous, at one time sold foie gras at her flagship restaurant Chez Panisse and features foie gras recipes in some of her cookbooks. Yet, even at the same time as she was selling foie gras at her restaurant, Waters was featured in Vegetarian Times in an article which reads, "Because of Waters, we now have lighter, fresher California cuisine based on locally grown, seasonal food." Straus, Karen Cope (June 1997). "Alice Waters: Earth Mother of California Cuisine," *Vegetarian Times*.

23.     A number of commentators who should know better frequently assert, mistakenly, that ducks raised for foie gras *like* to be force fed. For example, Marion Nestle, a professor of food studies and public health at New York University, and generally a progressive voice on food issues, was quoted in the New York Times regarding foie gras production as saying, "I've seen the videos,

and everyone says the same thing: they all seem to run up to be fed."
(http://www.nytimes.com/2011/10/16/us/in-california-going-all-out-to-bid-adieu-
to-foie-gras.html)

24.    However, no duck has *ever* been documented running up to be force
fed, and *all* videos about foie gras production universally show the ducks trying to
avoid the force feeder. In a 2008 undercover video shot by nonprofit animal
advocacy organization Compassion Over Killing of a tour given by Defendant
HVFG, the tour guide states the ducks are not showing "avoidance behavior," yet
all the while the ducks are seen huddling in the corner of their pen to get as far
away from the force feeder as possible. The HVFG tour guide asks the culinary
students and chefs taking the tour to believe him rather than what they are seeing in
front of them. (http://cok.net/inv/hudson-valley, lasted visited May 19, 2015.)

25.    A promotional video put out by Defendant HVFG featuring Anthony
Bourdain shows ducks in the farm panting, which is a sign of extreme distress, but
the video plays quacking sounds in this scene to make the ducks appear happy.
However, the breed of ducks used in foie gras production do not quack at all, and
the quacking sounds are fake. Even in this doctored video of HVFG's farm, the
ducks can be seen huddling in the corner of their pens to avoid the force feeder.
(http://www.hudsonvalleyfoiegras.com, last visited May 19, 2015.)

26.    As another example of the misinformation promulgated by
Defendants and resulting confusion within the food industry, prominent San Diego
attorney and food activist Michelle Ciccarelli Lerach, herself a vegan, was quoted
in a recent San Diego CityBeat article stating about foie gras, "I did my research
on it. I wasn't persuaded that this was extraordinary. If you want to impress me, go
after the factory that's clipping the beaks off chickens—not some fat ducks."
(http://www.sdcitybeat.com/sandiego/article-13676-the-philosophy-and-tactics-of-
bryan-pease.html)

/ / /

27.     Lerach was a leader of the 2012 Proposition 37 ballot initiative attempting to require labeling of GMO foods, which Plaintiff supported. Many of the local restaurants that sell foie gras also supported Prop 37, yet the corn Defendants force feed the ducks is all genetically engineered. This again underscores the confusion in the culinary community, that chefs claiming to care about genetically modified foods would be serving an item that uses the most genetically modified food of all. A single foie gras liver is the result of 45 to 60 pounds of genetically modified corn being force fed to a single duck.

28.     Defendants' false claims and marketing of foie gras to restaurants that focus on sustainability, combined with the fact that foie gras is not recognizable either in appearance or name as liver, except to those who speak French, and is actually more similar to a plant-based food because of its soft texture that is not meat-like, means that Plaintiff must educate consumers on the facts about this product and why it is not available at Plaintiff's restaurant. Such diversion of staff time and resources, and printing costs for making information available, has caused quantifiable monetary losses to Plaintiff.

29.     When Chicago banned foie gras sales in 2006, restaurants easily responded by selling faux foie gras that the Chicago Tribune restaurant critic Phil Vettel found indistinguishable from Defendants' foie gras. One of the alternatives was made from chick peas and butter. ("How does faux foie gras taste? Our critic knows. Spiaggia, Tru rise to the creative challenge," By Phil Vettel, Tribune restaurant critic, Published September 21, 2006 – cached at http://www.banfoiegras.com/fauxfoiegras.htm, last visited May 19, 2015.)

30.     Foie gras is also often sold as a paté that is spread on crackers or toast. Because of its soft, buttery texture, Defendants are able to misrepresent foie gras as being part of lighter, less meat-centered cuisine, even though it is produced using the most extreme form of factory farming imaginable. No other product involves forcing a tube down an animal's throat and pumping food in.

31.     The force feeding practiced by Defendants results in extreme pain and suffering and crippling injuries to the ducks.  The injuries to each duck can include respiratory distress, locomotive immobility, and a mortality rate that is 20 to 30 percent higher than at ordinary commercial duck farms.

32.     In order to force-feed the ducks, Defendants first restrain the body of the ducks so they cannot move. Defendants then hold open the mouths of the ducks and insert a 12-inch inflexible metal tube down their esophagi. While the ducks are so restrained, Defendants then pump approximately a pound of food, which is ten percent of a healthy duck's body weight, through the tube into each duck. The process of force-feeding is repeated approximately two to three times a day for approximately three weeks. At the end of this period, when the ducks livers' have swollen to over 12 times their normal size, Defendants slaughter the ducks.

33.     The feed used by Defendants is deliberately nutritionally deficient, specifically in the essential nutrient choline. Choline is vital for liver function, and its deficiency causes a rapid decay in liver function, an overwhelming increase in toxins in the bloodstream, extreme bodily pain, and a diseased, grossly enlarged liver that Defendants sell as foie gras.

34.     The massive quantity of feed Defendants pump into the ducks causes so much internal pressure that the ducks often regurgitate, something they do not have the physiological capability to do on their own. This can lead and has led to inhalation of the regurgitated feed and a slow, painful and premature death by suffocation.

35.     The long metal pipe Defendants use to force feed the ducks sometimes punctures the esophagi of the ducks. Some ducks die from drowning on blood that fills their lungs.

36.     All of the ducks in Defendants' farms have advanced cases of bumblefoot, a painful and debilitating infection of the foot caused by improper flooring and a lack of access to water used for swimming and preening.

37.    The vast discrepancy between how Defendants actually produce foie gras, and how the culinary community often perceives foie gras, is part of the reason Plaintiff has been forced to expend resources explaining the truth to consumers. However, if Defendants complied with the law and did not sell their illegally produced foie gras in California, Plaintiff would not have been forced to make these expenditures and would not need to continue making them.

38.    On January 1, 2005, the State of California specifically addressed force feeding in foie gras production by enacting Cal. Health & Safety Code section 25980, et. seq., which provides as follows:

25980.  For purposes of this section, the following terms have the following meanings:

(a) A bird includes, but is not limited to, a duck or goose.

(b) Force feeding a bird means a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily. Force feeding methods include, but are not limited to, delivering feed through a tube or other device inserted into the bird's esophagus.

25981.  A person may not force feed a bird for the purpose of enlarging the bird's liver beyond normal size, or hire another person to do so.

25982.  A product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size.

25983.  (a) A peace officer, officer of a humane society as qualified under Section 14502 or 14503 of the Corporations Code, or officer of an animal control or animal regulation department of a public agency, as qualified under Section 830.9 of the Penal Code, may issue a citation to a person or entity that violates this chapter.

9

    (b) A citation issued under this section shall require the person cited to pay a civil penalty in an amount up to one thousand dollars ($1,000) for each violation, and up to one thousand dollars ($1,000) for each day the violation continues. The civil penalty shall be payable to the local agency initiating the proceedings to enforce this chapter to offset the costs to the agency related to court proceedings.

    (c) A person or entity that violates this chapter may be prosecuted by the district attorney of the county in which the violation occurred, or by the city attorney of the city in which the violation occurred.

25984.  (a) Sections 25980, 25981, 25982, and 25983 of this chapter shall become operative on July 1, 2012.

    (b) (1) No civil or criminal cause of action shall arise on or after January 1, 2005, nor shall a pending action commenced prior to January 1, 2005, be pursued under any provision of law against a person or entity for engaging, prior to July 1, 2012, in any act prohibited by this chapter.

    (2) The limited immunity from liability provided by this subdivision shall not extend to acts prohibited by this chapter that are committed on or after July 1, 2012.

    (3) The protections afforded by this subdivision shall only apply to persons or entities who were engaged in, or controlled by persons or entities who were engaged in, agricultural practices that involved force feeding birds at the time of the enactment of this chapter.

    (c) It is the express intention of the Legislature, by delaying the operative date of provisions of this chapter pursuant to subdivision (a) until July 1, 2012, to allow a seven and one-half year period for persons or entities engaged in agricultural practices that include raising and selling force fed birds to modify their business practices.

10

39.     At the time this section was enacted, California's only foie gras producer was facing an unfair business practices lawsuit alleging that it was in violation of California's animal cruelty laws by force feeding ducks to produce foie gras. The lawsuit had survived a demurrer. *Animal Protection and Rescue League v. Sonoma Foie Gras*, Sonoma Superior Court Case No. 233687.

40.     Defendants continued selling foie gras from force fed ducks in California for eight years after this ban passed, taking advantage of the immunity provision that prevented any civil or criminal action based on force feeding ducks during that time. Once the ban took effect and the immunity was lifted on July 1, 2012, Defendant HVFG filed suit in U.S. District Court for the Central District of California to overturn the sale ban based on the Dormant Commerce Clause of the U.S. Constitution. This attempt was rejected, which was upheld on appeal, and the U.S. Supreme Court denied certiorari.

41.     Next, HVFG alleged the sale ban is preempted by the federal Poultry Products Inspection Act and convinced a U.S. District Judge to grant relief on this basis. A letter signed by 28 California attorneys, including a current San Diego Congressional representative, a former Assistant District Attorney in the Southern District of California, a retired Civil Chief of the U.S. Attorney's Office in the Northern District of New York, and a retired FTC Senior Attorney, encouraged Attorney General Kamala Harris to file an appeal, which she did, and the appeal is pending. A true and correct copy of the letter, which characterizes the decision striking down California's ban on foie gras from force fed ducks as overreaching, is attached hereto as Exhibit B.

42.     Other gourmet chefs and restaurants that serve meat and might be expected by certain customers to serve foie gras also supported an appeal of the federal decision. Los Angeles chef Kyle Schutte started an online petition supporting an appeal that reached 6,650 supporters before the appeal was filed.

(https://www.change.org/p/kamala-harris-appeal-undemocratic-and-inhumane-foie-gras-decision, last visited May 19, 2015.)

43.     A true and correct copy of the U.S. District Judge's order striking down the ban is attached hereto as Exhibit C.

44.     The order notes at page 13:

> However, the Court's functional approach to statutory construction suggests that § 25982 should be understood as a ban on force-feeding birds rather than as a sales ban. Under this reading, Defendant might be correct that § 25982 does not impose an ingredient requirement because it regulates a process. If so, then § 25982 would not be preempted.

45.     The order goes on to describe how section 25982 is a separate statute from section 25981, the section that bans the act of force feeding, and therefore should be seen as an "ingredient" ban subject to federal preemption.

46.     Whether or not the State of California is successful in challenging the U.S. District Court ruling that section 25982 bans an "ingredient" (preempted) rather than a "process" (not preempted), the U.S. District Court's reasoning that a state may ban the process of force feeding within its own borders still stands. Additionally, the District Court's reasoning that a state may lawfully ban the sale of a food product based on production methods in another state without violating the Dormant Commerce Clause still stands. A different U.S. District Court also upheld Chicago's ability to ban foie gras without violating the Dormant Commerce Clause when that ban passed in 2006. *Ill. Rest. Ass'n v. City of Chicago*, 492 F. Supp. 2d 891 (N.D. Ill. June 12, 2007).

47.     Accordingly, if the force feeding engaged in by Defendants is illegal under New York State law where it is done (notwithstanding that the law is not enforced by the New York prosecutor because he must seek reelection in a county in which force feeding ducks is the largest local industry), and Defendants proceed

12

to sell their products of this illegal force feeding in the State of California, California's unfair business practices statute allows an action such as the present one to challenge Defendants' sale of an illegally produced item in California.

48.   Both California and New York prohibit cruelty to animals as outlined below:

California Penal Code section 597(a) states:

> [E]very person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of an offense punishable by imprisonment in the state prison, or by a fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment, or, alternatively, by imprisonment in a county jail for not more than one year, or by a fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment.

California Penal Code section 597(b) states:

> [E]very person who . . . having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food . . . is, for every such offense, guilty of a crime punishable as a misdemeanor or as a felony or alternatively punishable as a misdemeanor or a felony and by a fine of not more than twenty thousand dollars ($20,000).

California Penal Code section 597f(a) states:

> Every owner . . . or possessor of any animal, who permits the animal to be in any building, enclosure . . . without proper care and attention, shall, on conviction, be deemed guilty of a misdemeanor.

California Penal Code section 597.1(a) states:

> Every owner . . . or keeper of any animal who permits the animal to be in any building, [or] enclosure . . . without proper care and attention is guilty of a misdemeanor.

California Penal Code section 599b states:

> In this title, the word "animal" includes every dumb creature; the words "torment," "torture," and "cruelty" include every act, omission, or neglect whereby unnecessary or unjustifiable physical pain or suffering is caused or permitted; and the words "owner" and "person" include corporations as well as individuals; and the knowledge and acts of any agent of, or person employed by, a corporation in regard to animals transported, owned, or employed by, or in the custody of, the corporation, must be held to be the act and knowledge of the corporation as well as the agent or employee.

New York Agriculture and Markets Code section 353, provides as follows:

> A person who overdrives, overloads, tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether wild or tame, and whether belonging to himself or to another, or deprives any animal of necessary sustenance, food or drink, or neglects or refuses to furnish it such sustenance or drink, or causes, procures or permits any animal to be overdriven, overloaded, tortured, cruelly beaten, or unjustifiably injured, maimed, mutilated or killed, or to be deprived of necessary food or drink, or who wilfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal, or any act tending to produce such cruelty, is guilty of a class A misdemeanor and for purposes of paragraph (b) of subdivision one of section 160.10 of the criminal procedure law, shall be treated as a misdemeanor defined in the penal law. Nothing herein contained shall be construed to prohibit or interfere with any properly conducted scientific tests, experiments or investigations, involving the use of living animals, performed or conducted in laboratories or institutions, which are approved for these purposes by the state commissioner of health. The state commissioner of health shall prescribe the rules under which such approvals shall be granted, including therein standards regarding the care and treatment of any such animals. Such rules shall be published and copies thereof conspicuously posted in each such laboratory or institution. The state commissioner of health or his duly authorized representative shall have the power to inspect such laboratories or institutions to insure compliance with such rules and standards. Each such approval may be revoked at any time for failure to comply with such rules and in any case the approval shall be limited to a period not exceeding one year.

49.     Accordingly, both California and New York law contain substantially similar provisions to prohibit cruelty to animals. The force feeding engaged in by Defendants is illegal under both states' laws. While California may have no permissible interest in regulating Defendants' activities in New York State, California does have a permissible interest in regulating the sale of products in California that are illegal to produce in California *and are illegal to produce in New York State.*

### FIRST CAUSE OF ACTION

**Unfair Business Practices**
**(Business and Professions Code § 17200 *et seq.*)**

50.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

51.     The Unfair Competition Law (UCL), California Business and Professions Code § 17200 *et seq.*, prohibits any "unlawful, unfair or fraudulent business practice…"  Section 17203 provides that "[a]ny person who engages, has engaged or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."

52.     Virtually any law can serve as the predicate for an unfair competition action. *State Farm Fire & Cas. Co. v. Superior Court* (1996) 45 Cal. App. 4th 1093, 1102-1103. The "unlawful" practices prohibited by Bus. & Prof. Code § 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. It is not necessary that the predicate law provide for private civil enforcement. *Saunders v. Superior Court* (1994) 27 Cal. App. 4th 832, 838-839; *see Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal. App. 4th 273, 287 (unfair competition cases have cited anti-discrimination laws, antitrust laws, criminal laws, environmental protection laws, fish and game laws, housing laws, labor laws, and vehicle laws.)

15

53.     By engaging in conduct that violates New York State Ag & Markets Code section 353 and selling their products in California, Defendants are engaging in an unlawful business practice and are in violation of Business and Professions Code § 17200 *et seq.*  Plaintiffs bring this action on behalf of themselves and the general public to remedy these violations.

54.     There is no requirement in California's unfair business practices statute that the law being violated by Defendants be a California state law. Rather, any law including a law of another state can serve as a predicate.

55.     Because there is no conflict between California's and New York's animal cruelty laws, and both states' laws are consistent in banning intentional cruelty to any animal, which would include force feeding ducks to enlarge their livers to over 12 times their normal size, granting Plaintiff relief in this action would not create any advantage for a California producer of foie gras over a New York producer.

56.     There is also no conflict between the order attached as Exhibit C and the relief requested by Plaintiff. The District Court found that the Poultry Products Inspection Act does *not* preempt bans on a particular production method, and California may lawfully ban force feeding. What California may not do according to the U.S. District Court is ban an "ingredient" of a poultry product manufactured in another state. However, the present action is squarely aimed at preventing unfair competition in California by companies that violate their own home state animal cruelty laws that prohibit the *process* of force feeding.

57.     Under the District Court order attached as Exhibit A, California is powerless to ban the sale of foie gras produced in another state if it is lawfully produced in that state unless or until the California Attorney General prevails in her appeal of this decision. However, the District Court did *not* analyze whether New York State law makes force feeding *there* illegal, as that issue was not briefed. Defendant HVFG alleged in its complaint in its action to overturn the ban

that its production methods were legal under New York State law, but did not explain how or why, and this issue was never analyzed in that case.

58.     The present case seeks to establish that Defendants' force feeding practices are so extreme and cruel that they must be considered illegal under any statute that bans intentional cruelty to or torture of an animal, including those of New York State, and California therefore has a permissible interest in banning the sale of this illegally produced foie gras in California without federal interference.

59.     As a separate and independent basis on which Defendants are engaging in unfair business practices in California is that the district court order attached as Exhibit C was incorrectly decided, and California law bans the sale of foie gras from force fed ducks.

60.     The unlawful conduct as detailed herein results in Defendants making substantially more revenue and profit than they would make if they complied with the law, and Plaintiff requests all available equitable relief thereon in furtherance of justice.

61.     As a result of Defendants continuing to sell foie gras in California despite its production being banned in California, many consumers are confused about whether the livers sold by Defendants are made by force feeding.

62.     Accordingly, Plaintiff has incurred monetary costs in diversion of staff resources and printing information for consumers explaining that the foie gras sold by Defendants is still made by force feeding.

63.     As a maker and seller of food items, Plaintiff is at a competitive disadvantage because of Defendants' unlawful acts, as Plaintiff must sell its legal and ethically produced food items in the same marketplace as Defendants' illegally produced foie gras.

64.     Because no New York court has ever ruled that Defendants' force feeding practices are *legal* under New York law, and at least one California court has ruled that substantially similar force feeding practices do form a basis for a

cause of action under BPC section 17200 for violating California's analogous general animal cruelty laws, and Defendants choose to sell the grossly enlarged livers from force fed ducks in California, Plaintiff is entitled to a determination from a California court that such practices are illegal under New York law for purposes of determining the foie gras Defendants sell in California is illegally produced.

65.     Defendants are also able to sell their products at prices much lower than what they would have to charge if Defendants did not employ unlawful labor practices, which include employing exclusively undocumented migrant workers who do not complain about terrible working conditions and no days off.

66.     Defendants also routinely violate the federal Clean Water Act with their discharges and violate other environmental laws.

## SECOND CAUSE OF ACTION

### Declaratory Relief

67.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

68.     An actual and concrete controversy has arisen between the parties over whether Defendants' actions as described above violate New York State Agriculture & Markets Code section 353 such that the sale of their products in California constitute unfair business practices under BPC 17200.

69.     An actual and concrete controversy has also arisen between the parties over the enforceability of Cal. Health & Safety Code section 25982 and whether it is preempted by the federal Poultry Products Inspection Act. Resolution of this controversy requires resolution of a substantial question of federal law.

70.     Plaintiff desires a judicial declaration of the parties' rights and duties as described herein.

/ / /

/ / /

**Wherefore, Plaintiff respectfully requests:**

1.      Injunctive relief to enjoin Defendants from selling foie gras in California that is made by force feeding birds in any jurisdiction that prohibits such cruelty;

2.      Injunctive relief to enjoin Defendants from selling foie gras in California that is produced by violating any state or federal laws including but not limited to labor and environmental laws;

3.      A declaration that force feeding ducks violates New York State Agriculture & Markets Code section 353;

4.      Declaratory and injunctive relief prohibiting the sale of foie gras from force fed birds in California as an unfair business practice under Cal. Health & Safety Code section 25982;

5.      An award of attorneys' fees and costs under California Code of Civil Procedure section 1021.5 or any other applicable statute; and

6.      For any such further relief as this Court may deem just and appropriate.


Respectfully submitted,


                                        LAW OFFICES OF BRYAN W. PEASE
                                        SIMON LAW GROUP
                                        LAW OFFICES OF MITCH C. WALLIS


Dated: May 19, 2015              By: _____
                                            Bryan W. Pease
                                        Attorneys for Plaintiff

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff demands a trial by jury as to each and every cause of action against

3  each and every defendant.

4

5  Respectfully submitted,

6                                LAW OFFICES OF BRYAN W. PEASE
                                 SIMON LAW GROUP
7                                LAW OFFICES OF MITCH C. WALLIS

8

9  Dated: May 19, 2015          By: _____

10                                    Bryan W. Pease
                                  Attorneys for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20